PHILLIP A. SCHNELTEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schnelten v. Commissioner
Docket No. 2570-92
United States Tax Court
T.C. Memo 1993-264; 1993 Tax Ct. Memo LEXIS 266; 65 T.C.M. (CCH) 2961; June 15, 1993, Filed *266 Decision will be entered under Rule 155. For pro se: Phillip A. Schnelten. For respondent: Darrell C. Weaver. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in and additions to petitioner's Federal income tax for tax years 1988 and 1989 as follows: For 1988, a deficiency in the amount of $ 1,919, and an addition to tax under section 6653(a)(1) in the amount of $ 96; for 1989, a deficiency in the amount of $ 2,497, and an addition to tax under section 6662(c) in the amount of $ 499. The issues for decision are: (1) Whether petitioner correctly reported all of his income for tax year 1988; (2) whether petitioner is entitled to claim various deductions for tax years 1988 and 1989 for his Schedule C business, American marketing; (3) whether petitioner omitted partnership income in the amount of $ 297 for 1988; (4) whether petitioner is entitled to claim earned income credit for 1988 *267 and 1989; (5) whether petitioner is entitled to claim dependent child care credit for 1988 and 1989; and (6) whether petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided in Carrollton, Illinois, when he filed his petition. In 1988, petitioner worked for Elfrink Truck Lines (Elfrink) in Springfield, Illinois, as a sales representative. He earned wages reported on Form W-2 in the amount of $ 22,469.91, of which $ 4,419.91 constituted reimbursement of travel expenses. Elfrink provided petitioner with offices in Advance, Missouri, and Springfield, Illinois. Petitioner was required to be in the office before 9 a.m. and to work until 3:30 to 4 p.m. in the afternoon. Petitioner was reimbursed by Elfrink for travel expenses under two systems in 1988. From January 1 through October 31, he was reimbursed at the rate of 22.5 cents per mile. After October 31, he was reimbursed at the rate of 7.3 cents per mile plus $ 299.28 per month for fixed costs. Also in 1988, petitioner, *268 doing business as American Marketing, performed services as an independent contractor acquiring routes and clients for C.R.H. Delivery, Inc. (C.R.H.). Petitioner operated American Marketing out of his residence. For this work, he was paid $ 6,694.98, of which he reported $ 4,788.47 as income. For 1989, petitioner reported $ 1,137 in income from C.R.H. This was the only Schedule C income petitioner reported for 1989. He did not work for C.R.H. in 1989. Petitioner testified that, because his compensation was based in part on the amount of business he generated, he actually received some of his 1988 income in the following year; he also testified that the discrepancies in his reported income were due to the fact that he had an agreement with C.R.H. that he would be reimbursed for the installation of a cellular phone in 1988 and that he deducted from his income the reimbursement which he failed to receive. Petitioner's employment agreement with C.R.H. states: "Employee shall be responsible for all expenses in the solicitation and servicing of accounts acquired by him." In 1988 and 1989, petitioner also worked for Delta Nu Alpha Transportation Fraternity (Delta Nu Alpha), a nonprofit *269 organization, which petitioner joined to learn more about the transportation industry. In 1989, petitioner was active in this organization, serving as assistant regional vice president and member of the board. He received no income from Delta Nu Alpha. For approximately half of 1988, petitioner resided in his parents' home in Carrollton, Illinois, where he lived rent free in exchange for his agreement to replace the roof and do other work on the property. Petitioner testified that the value of this work, exclusive of materials, was at least $ 5,000. Petitioner then rented a townhouse at Oak Grove Estates in Jacksonville, Illinois, beginning on or about August 19, 1988, when he made a security deposit of $ 280 and paid rent of $ 108.38. Petitioner continued to live in this townhouse throughout most of 1989. The townhouse consisted of two stories with four rooms: Two bedrooms and a bath upstairs; kitchen, bath, and living-dining room downstairs. One of the upstairs bedrooms was used by petitioner's children when they stayed with him. Part of the living-dining room was used for television and entertaining. In 1989, petitioner was unemployed for approximately the first half *270 of the year, during which time he looked for a job and received $ 5,120 in unemployment compensation. In July 1989, petitioner was hired as an employee of A-C Distributing (A-C) in Springfield, Illinois, negotiating contracts for the delivery of freight. He reported income from A-C in the amount of $ 17,400. Petitioner received a mileage allowance from A-C for his business travel, but has no records or recollection of the mileage or amounts involved. Petitioner had two cars in 1988, a 1987 Lincoln Town Car, which he bought in 1987 for $ 13,030, and a 1980 AMC Eagle, which was destroyed in an accident on July 29, 1988. Petitioner used the Lincoln primarily for business and the Eagle for personal purposes. Petitioner was twice arrested for driving under the influence of alcohol and lost his driver's license in November 1988. He was without a license during all of 1989. Petitioner reported on Form 4562, Depreciation and Amortization, that he drove 34,616 miles in 1988 and 28,730 in 1989. He testified that he hired a driver in 1989 and deducted wages for the driver in the amount of $ 1,179. Petitioner was divorced from his wife in 1979. His daughter, Jennifer, was born on March *271 2, 1974, and his son, Dustin, was born on January 30, 1976. Petitioner's former wife was the custodial parent of the children, who lived with petitioner for approximately 3 months in each year, i.e., vacations and some weekends. Petitioner and his former wife had a written agreement according to which petitioner was entitled to claim the children as his dependents. The record contains no evidence that petitioner spent anything for child care. 1. Unreported Income for Tax Year 1988
Respondent determined that petitioner failed to report all of his income from American Marketing for tax year 1988. Respondent's determination is presumed to be correct. Petitioner bears the burden of proving it erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner received a Form 1099-MISC from C.R.H. showing nonemployee compensation of $ 6,694.98. Petitioner reported income of $ 4,788.47 on Schedule C. The difference of $ 1,906.51 respondent determined was unreported income. Respondent argued that this was the exact amount of the value petitioner placed on the AMC Eagle which was destroyed in a crash and that petitioner was attempting *272 to obtain a deduction for this loss. Petitioner's testimony on this issue was confusing. He testified that, because his compensation was based on a percentage of the business he originated, some of the compensation he earned in 1988 was actually received in 1989. He also explained the discrepancy as his deduction of the charge for a cellular phone which C.R.H. had agreed to reimburse. Petitioner's explanations of the discrepancy in reported income are both undocumented and unpersuasive. The first explanation might have had some plausibility had petitioner not offered a second, inconsistent one. Petitioner's testimony that he had an agreement with C.R.H. covering reimbursement for installation of a cellular phone is further contradicted by his employment agreement, which states that he is responsible for all his own expenses. Petitioner has not carried his burden of proof on this issue. We uphold respondent's determination that petitioner underreported his Schedule C income for 1988 by $ 1,906.51. 2. Disallowed Deductions for Tax Years 1988 and 1989
Respondent determined that petitioner was not entitled to various deductions that he claimed on Schedule C as expenses *273 of American Marketing. Most of the deductions were undocumented, and, where documentation was produced, there was no evidence that the expenditure in question was made in connection with petitioner's self-employment rather than as a personal or employee business expense. Petitioner repeatedly claimed at trial that he gave documents for both years to respondent's office in Springfield, Illinois, but that no documents for tax year 1988 were returned. Petitioner had not made copies of these documents. The implication was that the lack of documentation was respondent's fault. Petitioner's deductions for both years, however, were almost equally undocumented, and, consequently, we are not persuaded by this explanation. We will consider each category of deductions separately, but will treat both tax years together. We begin with the admonition that all taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). To be deductible as ordinary and necessary business expenses, expenditures must be "directly connected with or pertaining *274 to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Deductions are strictly a matter of legislative grace, and a taxpayer has the burden of establishing that he or she is entitled to any deduction claimed on the return. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1943); Deputy v. Du Pont, 308 U.S. 488, 493 (1940). A. Auto Expenses Including Depreciation
On Schedule C attached to his 1988 Federal income tax return, petitioner deducted expenses attributable to use of his car for business purposes. For 1988, petitioner deducted car expenses as follows: Expense
Amount
Car expense
$ 1,601.73
Depreciation
2,437.42
Insurance
668.00
TOTAL
$ 4,707.15
Respondent disallowed most of these expenses, allowing petitioner to claim a deduction only to the extent of $ 701.10. The car expenses were only partially documented, and there was no evidence as to which vehicle the expenses pertained to or whether they were self-employment, employee, or personal expenses. Petitioner deducted his entire insurance premium for the year rather than apportioning it to his various activities. *275 In establishing that he is entitled to any amounts for mileage, insurance, and depreciation, petitioner must establish the percentage of use attributable to American Marketing. Petitioner deducted 58 percent of the depreciation on the Lincoln. At trial, he testified that 58 percent of the use of the Lincoln, or 20,057 miles, was for American Marketing and Delta Nu Alpha, as shown on Form 4562 attached to his 1988 return. In addition, the return showed that 36 percent of petitioner's mileage, or 12,610 miles, was for commuting, and 6 percent, or 1,949 miles, was for other personal use. At trial petitioner testified that the 12,610 miles listed for commuting were for Elfrink and that only 1,949 miles were for personal use, i.e., commuting. He presented no documentary evidence to support these statements. It strains our imagination that petitioner could have lived in Carrollton for at least half the year, done $ 5,000 worth of work on his parents' property, held a full-time job, moved, spent significant amounts of time with his children, and also driven over 20,000 miles for American Marketing in his free time. It is also incredible that petitioner commuted less than 2,000 miles *276 in that year. Furthermore, calculations based on petitioner's rate of reimbursement for auto expenses indicate that he drove approximately 19,000 miles for Elfrink. [1] In short, petitioner's statements lack credibility, and he has no documentation to back them up. Petitioner has failed to carry his burden of proof on this issue. For 1989, petitioner deducted the following car expenses: Expense
Amount
Car expense
$ 810.13  Depreciation
2,550.00
Insurance
576.00
TOTAL
$ 3,936.13
*277 Respondent disallowed all these deductions. Petitioner kept a log for 1989, showing that he drove 28,387 miles, and he had some receipts for auto expenses. However, petitioner's contentions concerning his 1989 expenses show the same weaknesses of documentation and credibility as were apparent for 1988. Petitioner deducted 100 percent of his insurance premium and claimed depreciation in approximately the same amount as for 1988. Petitioner estimated that 80 percent of the use of his car was for his Schedule C business, including Delta Nu Alpha. This contention is belied by the fact that his log shows that he drove 5,138 miles through May 1989, and the remainder of the year's mileage after he was hired by A-C in June. Petitioner received a mileage allowance from A-C, but he has no records or recollection of the amount or rate of his reimbursement. Petitioner has not carried his burden of proof with respect to either year in issue. Respondent's determination on the issue of deductibility of car expenses is sustained. B. Dues and Publications
For 1988, petitioner claimed a deduction in the amount of $ 33 for membership dues for Delta Nu Alpha transportation fraternity *278 and for its publication "Transportation Topics". Respondent disallowed this deduction for lack of substantiation, as well as on the ground that petitioner has put forward an "absurdly expansive view of business expenses". Ordinarily, dues of professional or trade organizations are deductible under section 162(a) as ordinary and necessary business expenses, as long as the expense is directly related to the taxpayer's business. Hymel v. Commissioner, 794 F.2d 939 (5th Cir. 1986) (holding insurance agent entitled to deduct membership dues to organization with purpose of promoting tourism), revg. T.C. Memo. 1985-198; Brooks v. Commissioner, 30 T.C. 1087 (1958), revd. on another issue 274 F.2d 96 (9th Cir. 1959). We are persuaded that petitioner was active in this trade organization and that it had a direct connection with his business as a self-employed transportation specialist. We hold that he is entitled to claim a deduction for $ 33 in dues as a business expense. C. Expenses for Home Office
For 1988, petitioner deducted rent in the amount of $ 1,120 and, for *279 1989, in the amount of $ 1,884, as expenses of conducting business from his home. Respondent disallowed deductions for both of these amounts, as well as $ 579.45 and $ 1,225.81 for utilities for 1988 and 1989, on the grounds that no room or area of petitioner's home was used solely for business purposes, as required by section 280A(c) and that, for tax year 1989, no business connection was established for the use of the property, since petitioner did not establish that American Marketing had any clients in that year. We address, as a general matter, petitioner's right to claim Schedule C deductions for 1989, when he did not establish that American Marketing was an active business, but did report Schedule C income. A taxpayer may be entitled to claim business deductions for carrying on a trade or business even though unemployed at the time the expenditures are incurred. An important factor in determining whether a taxpayer is still in a trade or business during a period of unemployment is whether the taxpayer's absence from the trade or business is temporary or indefinite. Haft v. Commissioner, 40 T.C. 2 (1963); Sherman v. Commissioner, T.C. Memo. 1977-301. *280 Hence, if petitioner was still seeking clients for American Marketing, or if he conducted the business in subsequent tax years, he might be entitled to deductions attributable to his activities with Delta Nu Alpha, a trade association in the transportation industry. Petitioner did not address this issue. We note, however, that petitioner did report self-employment income in the amount of $ 1,137 for 1989. Even if his activities in the transportation field did not rise to the level of a trade or business or were not conducted with the objective of making a profit, he would be entitled under section 183 to deduct expenses equal to the amount of the income earned. Section 183(a) provides, in pertinent part, that if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed except as otherwise provided in section 183(b). Section 183(b) separates deductions claimed with respect to an activity not engaged in for profit into two categories; i.e., those which are not dependent upon a profit objective and those which are so dependent. Under section 183(b)(1), the deductions which are not dependent upon a profit objective, such as taxes, are *281 allowable according to their governing sections, but under section 183(b)(2), the deductions which are dependent upon a profit objective are deductible only to the extent that the gross income from the activity exceeds the deductions allowable under section 183(b)(1). To the extent that petitioner satisfies these requirements, he is entitled to deduct documented expenses as self-employment expenses resulting from his transportation business, to the extent of his reported income. We proceed now to consider petitioner's entitlement to deductions for maintenance of an office in his home. Section 280A, in general, denies deductions with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. Section 280A(c), however, permits the deduction of expenses allocable to a portion of the dwelling unit which is "exclusively used on a regular basis" as the principal place of business for any trade or business of the taxpayer. Sec. 280A(c)(1). We are satisfied that petitioner used a portion of his house as the principal place of business for American Marketing in 1988. However, he has failed to establish the portion of the house that was *282 so used and has not persuaded us that any room or area of the house was used exclusively for business purposes. Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987). Petitioner's townhouse consisted of two stories with four rooms: Two bedrooms and a bath upstairs; kitchen, bath, and living-dining room downstairs. Petitioner's children lived with him during their vacations and weekends, and one bedroom was theirs. It is clear that, unless petitioner confined his children to their bedroom, the main room of the house was used for ordinary living, TV watching, eating, and entertaining. Petitioner's testimony corroborated this conclusion. Consequently, petitioner is not entitled to deduct any of his rent or any other expenses of his household, such as utilities, as a business expense because no room or area of his house was used exclusively for business purposes as required by section 280A(c)(1). D. Bank Charges for 1988
For 1988 petitioner deducted bank charges in the amount of $ 543.25. Respondent disallowed $ 528.52, allowing a deduction of $ 14.73. Petitioner has not carried his burden of proof on this issue, having presented *283 no documentation which would entitle him to claim deductions for any additional expenses. Respondent's determination is upheld. E. Interest for Tax Years 1988 and 1989
Petitioner owns a flat-bottom riverboat, which has been converted to a cottage. It is located near the Mississippi River north of St. Louis, and it is now petitioner's residence. In the years in question, he used it as a hunting and fishing lodge to entertain friends and business associates. For 1988 and 1989, respondent disallowed interest deductions as follows: For 1988, $ 781.47, which petitioner claimed was mortgage interest, and $ 462.63, which petitioner testified was interest on another loan to finance the same property; for 1989, interest in the amounts of $ 576 and $ 632.08, similarly claimed to represent interest on loans to finance the purchase of the cottage. Petitioner presented no evidence of the payment of these amounts or of the use of cottage. Respondent's determination on the deductibility of these amounts is upheld. Petitioner's records submitted to establish interest payments show that he paid bank finance charges of $ 108.89 to Marine Bank in 1989. Personal interest is deductible *284 for tax year 1989 only to the extent it exceeds the applicable percentage. Sec. 163(h)(5). The applicable percentage is 80 percent for 1989. Sec. 163(d)(6)(B). Hence, petitioner is entitled to deduct interest in the amount of 20 percent of $ 108.89 or $ 21.78. F. Laundry and Cleaning
For 1988, respondent disallowed a deduction in the amount of $ 141.85 for the cleaning of petitioner's business suits and ties. Expenses of maintaining a professional wardrobe are nondeductible personal expenditures. Sec. 262. Expenses for clothing are deductible only if the clothing is required for the taxpayer's employment, is not suitable for general and personal wear, and is not so worn. Hynes v. Commissioner, 74 T.C. 1266 (1980); Yeomans v. Commissioner, 30 T.C. 757 (1958); Dunkelberger v. Commissioner, T.C. Memo. 1992-723. We sustain respondent's determination on this issue. G. Legal and Professional Services
For 1988, respondent disallowed a deduction in the amount of $ 942 for legal and professional services. Petitioner offered into evidence receipts for expenses including receipts *285 from 1985 and a doctor's bill from 1987. The purpose of all expenses was not clear, but they appear to be solely personal; i.e., payment for a traffic ticket, a doctor's bill, $ 30 for "reinstatement" apparently of petitioner's driver's license, and a $ 14 payment for a post office box. Petitioner had no recollection of the business connection of any of these expenses. For 1989, respondent disallowed a deduction $ 5,932.26 in legal and professional fees. Petitioner's documentation contains evidence of payments in the amount of $ 2,637 for legal fees paid to fight two charges of driving under the influence of alcohol, as well as fees paid for fines, court charges, etc. A deduction for fines is specifically prohibited by section 162(f). Legal expenses are deductible only if they have a business origin, but not if their origin is personal. United States v. Gilmore, 372 U.S. 39 (1963). Legal expenses incurred in the defense of traffic violations are personal expenses and not deductible. Snyder v. Commissioner, T.C. Memo. 1975-221; Michaelis v. Commissioner, T.C. Memo. 1971-199, affd. *286 32 AFTR 2d 73-5859 (9th Cir. 1973). The remainder of petitioner's receipts evidence essentially personal expenses such as cleaning bills, haircuts, chiropractor's bills, purchase of an encyclopedia, and membership in various organizations such as gyms and the National Rifle Association. For the reasons stated above, we hold that none of these expenses deducted as legal and professional services are deductible for tax years 1988 and 1989. H. Miscellaneous Expenses
For 1988, respondent disallowed a deduction in the amount of $ 267.38 for office expenses. Petitioner has no documentation for these expenses. He did, however, document expenses for his cellular telephone for 1988 in the amount of $ 350.62. Petitioner also submitted evidence showing that American Marketing paid $ 90 to Marine Bank of Springfield as service charges for overdrafts in 1989. Respondent's disallowance of a deduction for office expenses is sustained, but petitioner is entitled to claim these documented amounts as business expenses on Schedule C for 1988 and 1989. I. Advertising for Tax Year 1989
On Schedule C, petitioner deducted advertising expenses in the amount of *287 $ 104.50. Respondent disallowed this deduction. At trial, petitioner brought forth copies of checks for the printing of handbills totaling $ 102.17. Respondent's position is that, despite the fact that the expense was documented, petitioner was not self-employed in 1989, and he did not rule out the possibility that the expense was allocable to Delta Nu Alpha. As stated above, we have found that petitioner is entitled to claim deductions from his transportation-related activities, at least to the extent of reported income. We have also found documented expenses attributable to Delta Nu Alpha, a trade association in the transportation business, gave rise to legitimate business deductions. Consequently, we hold that petitioner is entitled to claim a deduction in the amount of the documented advertising expenses, $ 102.17. J. Meals and Entertainment Tax Years 1988 and 1989
For 1988, respondent disallowed deductions for travel expenses in the amount of $ 981.53, as well as for meal and entertainment expenses in the amount of $ 414.63. For 1989, respondent disallowed deductions for meals and entertainment in the amount of $ 209.95. Petitioner has no records of the individuals *288 he entertained or the relationship of each expense to his business; nor has he produced any documentation of the travel expenses or their connection to his business. Under the provisions of section 274(a), expenses for meals and entertainment are subject to stringent standards of documentation in order to qualify for deductibility. No deduction is allowable for any activity of the type generally considered to constitute entertainment unless the taxpayer provides detailed documentation. Taxpayers must provide evidence of the occasion and date of the event, the persons entertained, and the relationship of the entertainment to business. Travel expenses away from home must be documented under the same standards. Sec. 274(d). Petitioner has provided no such documentation. We hold that petitioner is not entitled to claim deductions for travel, meals, and entertainment for the years in question. K. Wages
Petitioner lost his driver's license in approximately November 1988 and was without a license for all of 1989. Petitioner deducted $ 1,179 representing wages for the driver he allegedly hired while his license was suspended. Petitioner testified that he paid his driver entirely *289 in cash and has no records of the payments. Petitioner has failed to meet his burden of proof on this issue. Respondent's determination is sustained. 3. Unreported Partnership Income for 1988
Respondent determined that for tax year 1988 petitioner failed to report partnership income in the amount of $ 297. Petitioner, who failed to present any evidence on this issue, has not carried his burden of proof. Respondent's determination is sustained. 4. Earned Income Credit and Credit for Dependent Care
In his petition, petitioner raised the issue of his entitlement to dependent care credit. At trial, he raised the issue of his entitlement to earned income credit. He estimated that these credits would be enough to offset the deductions disallowed by respondent. Petitioner's raising of these issues appears to us to be frivolous, and we will treat them summarily. Under the provisions of section 32, the earned income credit, a refundable credit for low-income taxpayers, is allowed to an "eligible individual". An "eligible individual" is defined in section 32(c)(1) as: (1) A married individual entitled to an exemption for a child, (2) a surviving spouse, or (3) a head *290 of household. Petitioner is not married nor a surviving spouse, and he does not qualify as head of household. A head of household maintains a household which constitutes the principal place of abode of children for more than one-half of the taxable year. Sec. 2(b)(1)(A). Petitioner's children lived with him only 3 months of the year. Consequently, petitioner does not qualify to claim earned income credit. The credit for dependent care services provided for by section 21 applies to expenses incurred for care of dependents and household services in order to make it possible for the taxpayer to work. This credit is allowed to an individual who maintains a household which includes one or more "qualifying individuals". Sec. 21(a)(1). Section 21(e)(5) provides that, in the case of divorced parents, the children will be treated as "qualifying individuals" only with respect to the custodial parent. Petitioner was not the custodial parent of his children. For this reason, he fails to qualify for the dependent care credit. Since petitioner fails to satisfy this requirement, we need not address other provisions of the statute which he similarly fails to satisfy. We hold that petitioner *291 is not entitled to claim a tax credit for dependent care services. 5. Additions to Tax for Negligence
Respondent determined additions to tax for negligence or intentional disregard of rules or regulations for both years in question. For tax year 1988, the negligence addition, determined pursuant to section 6653(a)(1), is 5 percent of the underpayment. For tax year 1989, the negligence penalty formerly under section 6653 is subsumed under the accuracy-related penalty in section 6662(a), which provides for an addition to tax equal to 20 percent of the underpayment of tax attributable to negligence or disregard of rules or regulations. [2]Sec. 6662(b)(1). The accuracy-related penalty imposed for negligence has essentially the same requirements as for section 6653(a), except that the amount of the penalty differs. *292 Negligence under section 6653(a) means lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). This reasonableness standard for negligence has been codified in section 6662(c), which defines negligence to include "any failure to make a reasonable attempt to comply with the provisions of this title". Petitioner has the burden of proving that respondent's determination of the additions to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Taxpayers are required to maintain permanent books of account or records sufficient to establish the amount of gross income, deductions, credits, and other matters required to be shown in their tax returns. Sec. 1.6001-1(a), Income Tax Regs. In this case, petitioner's failure to keep records with respect to claimed deductions is negligence within the meaning of section 6653(a). Furthermore, petitioner displays a pattern of inflating his claims for undocumented business expenses by the addition of nondeductible personal expenses. We find that *293 the entire amount of petitioner's understatement for both years is attributable to negligence. We uphold respondent's determination as to this issue. Decision will be entered under Rule 155. Footnotes
1. Petitioner was reimbursed $ 4,419.91 for automobile expenses. After subtraction of two monthly payments of $ 299.28, the remaining $ 3,821.35 represents mileage reimbursement. Petitioner was reimbursed 22.5 cents per mile for a period of 10 months and 7.3 cents per mile for 2 months. If we assume that he drove an equal number of miles each month, the following equation shows that he drove a total of 19,106.75 miles for Elfrink in 1988. X = number of miles driven X[(10/12)(.225) + (2/12)(.073)] = $ 3,821.35 X = 19,106.75↩
2. The additions to tax for negligence, sec. 6663(a), valuation overstatement, sec. 6659, and substantial understatement of tax liability, sec. 6661, were repealed for returns due after Dec. 31, 1989, and were replaced with an accuracy-related penalty under sec. 6662↩. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c), 103 Stat. 2106, 2399.